SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Bound Brook Board of Education v. Glenn Ciripompa** (A-57-15) (076905)

**Argued November 9, 2016 -- Decided February 21, 2017**

**Timpone, J., writing for a unanimous Court.**

In this appeal, the Court determines whether an arbitrator exceeded his authority by applying the standard for proving a hostile-work-environment, sexual-harassment claim in a law against discrimination (LAD) case to a claim of unbecoming conduct in a tenured teacher disciplinary hearing.

Defendant Glenn Ciripompa is a tenured high school math teacher, in the Bound Brook School District (District). Defendant's behavior came under the scrutiny of the Bound Brook Board of Education (Board) after the Board received copies of student Twitter posts alleging "Mr. C" was electronically transmitting nude photographs. An investigation uncovered defendant's pervasive misuse of his District-issued laptop and iPad, as well as evidence of inappropriate behavior toward female colleagues, often in the presence of students. The results of the investigation spurred the Board to seek defendant's termination from his tenured position and served as the substantive allegations of the two-count tenure complaint against defendant.

Count I of the complaint centered on defendant's improper use of the District-issued laptop and iPad. The District's policy prohibits "all employees and students using District computers, iPads and District networks" from accessing content for "illegal, inappropriate or obscene purposes, or in support of such activities."

Count II set forth allegations concerning defendant's inappropriate behavior, noting that "[t]eaching Staff members in the Bound Brook School District, including Mr. Ciripompa, receive training with respect to appropriate conduct towards staff members and workplace harassment on an annual basis," and that "[i]nterviews of female staff members revealed that Mr. Ciripompa has repeatedly engaged in unprofessional, inappropriate and potentially harassing behavior towards female staff members."

The concluding prayer for relief applied to both counts of the complaint. It stated that "the foregoing unbecoming conduct warrants [defendant's] dismissal from the Bound Brook Borough School District . . . ."

Pursuant the Tenure Employees Hearing Law (TEHL), N.J.S.A. 18A:6-10 to -18.1, the charges were brought to the Commissioner of Education and, when the Commissioner agreed that the charges warranted termination, to an arbitrator. The arbitrator found that the Board had proven the allegations underlying Count I but dismissed Count II with prejudice, reducing the penalty from dismissal to a 120-day suspension without pay.

The arbitrator began his analysis of Count II by noting that, "[w]hile the charges contained in Count II do not specifically state sexual harassment, it is clear from the nature of the allegations and the cited policy that this is in fact the case, as [defendant] has likewise recognized." The arbitrator then announced that, under this Court's decision in Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 610 (1993), a successful claim for sexual harassment requires a showing that "working conditions were affected by the harassment to the point at which a reasonable woman would consider the working environment hostile." The arbitrator found that defendant's conduct did not meet the Lehmann standard and concluded that misuse of the District-issued electronics did not justify defendant's removal from his tenured teaching position.

The District sought review in the Superior Court, Chancery Division. The court reversed the arbitrator's decision, remanding it for a review before a new arbitrator. The court held that the arbitrator "erroneously changed the nature of Count II and imposed an inappropriate standard."

1

On appeal, the Appellate Division reversed the Chancery Division's decision vacating the arbitral award and reinstated the suspension. 442 N.J. Super. 515, 518 (App. Div. 2015). The panel found no error in the arbitrator's application of the Lehmann standard to the charges proffered against defendant. Id. at 526.

The Court granted the Board's petition for certification, limited to the issue of whether the arbitrator's reliance on Lehmann in dismissing the Board's second charge of inappropriate and unprofessional conduct supported vacating the arbitrator's award. 224 N.J. 280 (2016).

**HELD**: The arbitrator impermissibly converted the second charge of unbecoming conduct into one of sexual harassment. The re-characterization of Count II erroneously tasked the Board with substantiating charges it did not file with evidence it did not proffer. The arbitrator's review was not "consonant with the matter submitted," Grover v. Universal Underwriters Ins. Co., 80 N.J. 221, 231 (1979); rather, he "imperfectly executed his powers" as well as exceeded his authority by failing to decide whether Count II stated a successful claim of unbecoming conduct in support of termination. N.J.S.A. 2A:41-8(d). The arbitrator's award is therefore invalid.

1. Judicial review of an arbitration award is very limited. An arbitrator's award is not to be cast aside lightly. It is subject to being vacated only when it has been shown that a statutory basis justifies that action. (p. 8)

2. Under New Jersey's TEHL, "[t]he arbitrator's determination shall be final and binding," but "shall be subject to judicial review and enforcement as provided pursuant to N.J.S.[A.] 2A:24-7 through N.J.S.[A.] 2A:24-10." N.J.S.A. 18A:6-17.1. Pursuant to the cross-referenced statutes, there are four bases upon which a court may vacate an arbitral award. N.J.S.A. 2A:24-8(a) to -(d). The claim of error in this case implicates subsection (d) of N.J.S.A. 2A:24-8, which provides for vacatur "[w]here the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter was not made." (pp. 9-10)

3. Limits to the arbitrator's authority are defined by statute, N.J.S.A. 2A:24-8, as well as by the questions framed by the parties in a particular dispute. Indeed, an arbitrator's award "should be consonant with the matter submitted. Otherwise, the determination is contrary to the authority vested in him." Grover, supra, 80 N.J. at 231. The Third Circuit addressed "allegation[s] that the arbitrators exceeded their authority by resolving an issue the parties did not intend to submit" under 9 U.S.C.A. § 10(a)(4), which is virtually identical to N.J.S.A. 2A:24-8(d), by considering "whether the arbitrators manifestly exceeded their authority in interpreting the scope of the parties' submissions." Metromedia Energy, Inc. v. Enserch Energy Servs., 409 F.3d 574, 579 (3d Cir. 2005), cert. denied, 546 U.S. 1089 (2006). The Court agrees that a claim that an arbitrator decided a legal question not placed before him or her by the parties is tantamount to a claim that the arbitrator "imperfectly executed [his or her] powers" as well as a claim that the arbitrator exceeded his or her authority within the meaning of N.J.S.A. 2A:24-8(d). (pp. 10-12)

4. Proving hostile work environment is not necessary to satisfy the burden of showing unbecoming conduct. A charge of unbecoming conduct requires only evidence of inappropriate conduct by teaching professionals. It focuses on the morale, efficiency, and public perception of an entity, and how those concerns are harmed by allowing teachers to behave inappropriately while holding public employment. The Court has made it clear that the failure of a school board to prove a different offense does not preclude a finding of unbecoming conduct. Claims of hostile work environment, sexual harassment and unbecoming conduct are governed by separate, distinct legal standards and in separate, distinct legal contexts. (pp. 12-14)

5. There are settings in which sexual harassment claims may provide the underpinnings of an unbecoming conduct charge. This is not one of them. The arbitrator erred in his reliance on Lehmann because he imposed a different and inappropriate standard of proof on the Board to sustain its unbecoming conduct in the presence of students claim. The arbitrator "imperfectly executed" his power by misinterpreting the intentions of the Board so significantly as to impose a sexual harassment analysis, when such an analysis was wholly ill-suited in this context. The instant matter is not an employee-versus-employer dispute that requires application of the Lehmann standard. Indeed, that standard distorts the evaluatory method pertinent to this matter, making it inappropriate for consideration here. (pp. 14-18)

The judgment of the Appellate Division is **REVERSED.** The matter is **REMANDED** for arbitration with a new arbitrator.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.**

2

BOUND BROOK BOARD OF
EDUCATION,

     Plaintiff-Appellant,

             v.

GLENN CIRIPOMPA,

     Defendant-Respondent.


       Argued November 9, 2016 – Decided February 21, 2017

       On certification to the Superior Court,
       Appellate Division, whose opinion is
       reported at 442 N.J. Super. 515 (App. Div.
       2015)

       Robert J. Merryman argued the cause for
       appellant (Apruzzese, McDermott, Mastro &
       Murphy, attorneys).

       Arnold M. Mellk argued the cause for
       respondent (Mellk O'Neill, attorneys; Edward
       A. Cridge, on the brief).

       Robert A. Greitz argued the cause for amicus
       curiae New Jersey School Boards Association
       (Cynthia J. Jahn, General Counsel,
       attorney).

    JUSTICE TIMPONE delivered the opinion of the Court.

    In this case we determine whether an arbitrator exceeded

his authority by applying the standard for proving a hostile-

work-environment, sexual-harassment claim in a law against

1

discrimination (LAD) case to a claim of unbecoming conduct in a tenured teacher disciplinary hearing. We find that he did.

Defendant Glenn Ciripompa is a tenured high school math teacher, in the Bound Brook School District (District). The Bound Brook Board of Education (Board) charged defendant with two counts of unbecoming conduct. Reviewing under the Tenure Employees Hearing Law (TEHL), N.J.S.A. 18A:6-10 to -18.1, the arbitrator determined that the Board failed to prove that the conduct charged in the second count met the four-prong hostile work environment test set forth in Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993).

The arbitrator impermissibly converted the second charge into one of sexual harassment. Accordingly, we reverse the judgment of the Appellate Division and remand for arbitration with a new arbitrator to determine whether defendant committed unbecoming conduct, and any appropriate penalty.

I.

We distill the following pertinent facts from the record. Defendant's behavior came under Board scrutiny after the Board received copies of student Twitter posts alleging "Mr. C" was electronically transmitting nude photographs. An investigation uncovered defendant's pervasive misuse of his District-issued laptop and iPad, as well as evidence of inappropriate behavior toward female colleagues, often in the presence of students.

2

The results of the investigation spurred the Board to seek defendant's termination from his tenured position and served as the substantive allegations of the two-count tenure complaint against defendant.

Count I of the complaint, unambiguously labelled "Conduct Unbecoming," centered on defendant's improper use of the District-issued laptop and iPad. The District's policy prohibits "all employees and students using District computers, iPads and District networks" from accessing content for "illegal, inappropriate or obscene purposes, or in support of such activities." The complaint alleged that defendant had "received and signed for a copy of the District's acceptable use policy." Evidence adduced at the arbitration hearing established that defendant used the devices, sometimes during work hours, on the District computer network to send explicit pictures of himself and to seek similar pictures in return from various women on the internet. On the District-issued devices, defendant saved nude pictures and sexually explicit emails, sent and received by defendant, including negotiations for paid sexual services.

Count II, without a specific label, set forth the following allegations:

> 1. Teaching Staff members in the Bound Brook School District, including Mr. Ciripompa, receive training with respect to appropriate

3

conduct towards staff members and workplace harassment on an annual basis.

2. During the 2013-14 School Year complaints were received about Mr. Ciripompa's inappropriate conduct towards female staff members.

3. Interviews of female staff members revealed that Mr. Ciripompa has repeatedly engaged in unprofessional, inappropriate and potentially harassing behavior towards female staff members.

4. On two occasions Mr. Ciripompa asked female staff members out on dates in front of students, thereby making the staff members very uncomfortable.

5. Mr. Ciripompa has repeatedly commented about the physical appearance and dress of female staff members, making them very uncomfortable.

6. Mr. Ciripompa sent flowers to a female staff member, using students to deliver the flowers, along with messages that the female staff member found to be inappropriate.

The concluding prayer for relief applied to both counts of the complaint. It stated that "the foregoing unbecoming conduct warrants [defendant's] dismissal from the Bound Brook Borough School District in accordance with N.J.S.A. 18A:6-10."

In support of the charges, the Board produced physical evidence taken from defendant's Board-issued computer and iPad, as well as testimonial evidence that defendant, in the presence of students, propositioned staff members to date him and commented on the physical appearance of female staff. Notably,

4

defendant's remark about the tight fit of a female teacher's pants prompted a follow-up question by a student who was present when defendant uttered the remark. Defendant also used a student as his personal courier to deliver flowers and "inappropriate" messages to a colleague he was pursuing.

In accordance with the TEHL, the Board determined by a majority vote that the evidence supported the charges and warranted dismissal. The Commissioner of Education (Commissioner) reviewed the charges and agreed they warranted termination. The charges were then submitted for review by an arbitrator, pursuant to N.J.S.A. 18A:6-16. The arbitrator found that the Board had proven the allegations underlying Count I but dismissed Count II with prejudice, reducing the penalty from dismissal to a 120-day suspension without pay.

The arbitrator began his analysis of Count II by noting that, "[w]hile the charges contained in Count II do not specifically state sexual harassment, it is clear from the nature of the allegations and the cited policy that this is in fact the case, as [defendant] has likewise recognized." The arbitrator then announced that, under this Court's decision in Lehmann, supra, 132 N.J. at 610, a successful claim for sexual harassment requires a showing that "working conditions were affected by the harassment to the point at which a reasonable woman would consider the working environment hostile." The

5

arbitrator emphasized that the subjective feelings of the female staff members were insufficient to establish a hostile work environment claim.  He found that defendant's conduct was not severe or pervasive enough to "modify the [female staff members'] behavior or routine in any material way."  While announcing that defendant's "conduct cumulatively amounted to a shocking abdication of his professional responsibility" and "rais[ed] bad judgment to an art form," the arbitrator found, contrary to evidence presented, that defendant "had no prior warnings" concerning misuse of the computer system.  The arbitrator concluded that misuse of the District-issued electronics did not justify defendant's removal from his tenured teaching position.

Pursuant to N.J.S.A. 18A:6-17.1(e), the District sought review in the Superior Court, Chancery Division.  The court reversed the arbitrator's decision, remanding it for a review before a new arbitrator.  The court held that the arbitrator "erroneously changed the nature of Count II and imposed an inappropriate standard."

On appeal, the Appellate Division reversed the Chancery Division's decision vacating the arbitral award and reinstated the suspension.  Bound Brook Bd. of Educ. v. Ciripompa, 442 N.J. Super. 515, 518 (App. Div. 2015).  The panel found no error in

6

the arbitrator's application of the Lehmann standard to the charges proffered against defendant. Id. at 526.

We granted the Board's petition for certification, limited to the issue of whether the arbitrator's reliance on Lehmann in dismissing the Board's second charge of inappropriate and unprofessional conduct supported vacating the arbitrator's award. Bound Brook Bd. of Educ. v. Ciripompa, 224 N.J. 280 (2016). We granted leave to the New Jersey School Board Association (Association) to appear as amicus curiae.

II.

The Board urges this Court to reverse the judgment of the Appellate Division, contending that the arbitrator's hostile work environment analysis was improper. The Board argues that there is a fundamental difference between charges of "unbecoming conduct" and "sexual harassment" and that the arbitrator improperly conflated the two to require the Board to prove a hostile work environment under Lehmann.

In support of the Board's position, the amicus Association maintains that the arbitrator lacked the authority to alter or rewrite the charges. The Association contends that the arbitrator should have limited his analysis to a determination of unbecoming conduct. The Association underscores the practical impossibility of trying to prepare and present appropriate evidence if "arbitrators [have] the ability to

7

unilaterally change the charges presented."  Further, the Association asserts that requiring the Board to prove hostile work environment "would be anathema in a school setting."  It argues that schools would have no recourse against isolated but abhorrent incidents that would not rise to the level of a hostile work environment, yet would satisfy the standard of unbecoming conduct.

Defendant urges this Court to read the underlying facts of the count as predicated on allegations of sexual harassment sufficient to trigger a Lehmann analysis.  Defendant highlights the Board's own reliance on Lehmann during questioning of witnesses and on its references to the sexual harassment policies as indicative of the true nature of Count II -- sexual harassment.

### III.

"Judicial review of an arbitration award is very limited." Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010).  "An arbitrator's award is not to be cast aside lightly.  It is subject to being vacated only when it has been shown that a statutory basis justifies that action." Kearny PBA Local #21 v. Town of Kearny, 81 N.J. 208, 221 (1979). We therefore begin with a review of the circumstances under which a court may vacate an arbitral award and then consider whether this case merits such action.

8

A.

New Jersey's TEHL provides tenured public school teachers with certain procedural and substantive protections from termination.  N.J.S.A. 18A:6-10 provides that no tenured employee of the public school system "shall be dismissed or reduced in compensation . . . except for inefficiency, incapacity, unbecoming conduct, or other just cause."  If the charges are substantiated, they are submitted for review by the Commissioner.  N.J.S.A. 18A:6-11.  If the Commissioner determines the tenure charges merit termination, the case is referred to an arbitrator.  N.J.S.A. 18A:6-16.  "The arbitrator's determination shall be final and binding," but "shall be subject to judicial review and enforcement as provided pursuant to N.J.S.[A.] 2A:24-7 through N.J.S.[A.] 2A:24-10."  N.J.S.A. 18A:6-17.1.  Pursuant to the cross-referenced statutes, there are four bases upon which a court may vacate an arbitral award:

> a.    Where the award was procured by corruption, fraud or undue means;
>
> b.    Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c.    Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or

9

> of any other misbehaviors prejudicial to the rights of any party;
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
>
> [N.J.S.A. 2A:24-8.]

Here, the issue is whether the arbitrator impermissibly transmuted Count II's allegation of unbecoming conduct into a charge of hostile work environment sexual harassment and thus measured the Board's claim against an improper legal standard, namely the standard articulated by this Court in Lehmann, supra, 132 N.J. at 603-04. This particular claim of error implicates subsection (d) of N.J.S.A. 2A:24-8.

"[L]imits to the arbitrator's authority . . . are defined by statute, N.J.S.A. 2A:24-8," as well as "by the questions framed by the parties in a particular dispute." Local No. 153, Office & Prof'l Emps. Int'l Union v. Tr. Co. of N.J., 105 N.J. 442, 449 (1987). Indeed, an arbitrator's award "should be consonant with the matter submitted. Otherwise, the determination is contrary to the authority vested in him." Grover v. Universal Underwriters Ins. Co., 80 N.J. 221, 231 (1979); cf. Trentina v. Fitzpatrick & Assocs., 135 N.J. 349, 359 (1994)("If the arbitrators decide a matter not even submitted to them, that matter can be excluded from the award." (quoting

10

<u>Perini Corp. v. Greate Bay Hotel & Casino, Inc.</u>, 129 <u>N.J.</u> 479,

548 (1992))).

The Third Circuit addressed "allegation[s] that the

arbitrators exceeded their authority by resolving an issue the

parties did not intend to submit" under 9 <u>U.S.C.A.</u> § 10(a)(4),

which is virtually identical to <u>N.J.S.A.</u> 2A:24-8(d), by

considering "whether the arbitrators manifestly exceeded their

authority in interpreting the scope of the parties'

submissions." <u>Metromedia Energy, Inc. v. Enserch Energy Servs.</u>,

409 <u>F.</u>3d 574, 579 (3d Cir. 2005), <u>cert. denied</u>, 546 <u>U.S.</u> 1089,

126 <u>S. Ct.</u> 1021, 163 <u>L. Ed.</u> 2d 852 (2006).

The Third Circuit described how courts review claims that

arbitrators have exceeded their authority:

> [A]rbitrators have the authority in the first
> instance to interpret the scope of the
> parties' submissions in order to identify the
> issues that the parties intended to arbitrate.
> When confronted with an allegation that the
> arbitrators exceeded their authority by
> resolving an issue the parties did not intend
> to submit, we will review the arbitrator's
> interpretation of the parties' intentions
> under a "highly deferential" standard.
> Nonetheless, this deference is not a rubber
> stamp, and our review must focus upon the
> record as a whole in determining whether the
> arbitrators manifestly exceeded their
> authority in interpreting the scope of the
> parties' submissions.
>
> [<u>Metromedia Energy, Inc.</u>, <u>supra</u>, 409 <u>F.</u>3d at
> 579 (discussing <u>Matteson v. Ryder Sys. Inc.</u>,
> 99 <u>F.</u>3d 108, 112-14 (3d Cir. 1996), <u>cert.</u>

11

denied, 546 U.S. 1089, 126 S. Ct. 1021, 163 L. Ed. 2d 852 (2006)).]

We agree that a claim that an arbitrator decided a legal question not placed before him or her by the parties is tantamount to a claim that the arbitrator "imperfectly executed [his or her] powers" as well as a claim that the arbitrator exceeded his or her authority within the meaning of N.J.S.A. 2A:24-8(d).

Having concluded that subsection (d) frames our review of this matter, we turn to the substance of the Board's claim.

IV.

We first review the standard applied to a claim of unbecoming conduct.

This Court has defined unbecoming conduct as conduct "which adversely affects the morale or efficiency of the [department]" or "has a tendency to destroy public respect for [government] employees and confidence in the operation of [public] services." In re Young, 202 N.J. 50, 66 (2010) (alterations in original) (quoting Karins v. Atl. City, 152 N.J. 532, 554 (1998)). We have also held that a finding of unbecoming conduct "need not 'be predicated upon the violation of any particular rule or regulation, but may be based merely upon the violation of the implicit standard of good behavior which devolves upon one who stands in the public eye as an upholder of that which is morally

12

and legally correct.'" Karins, supra, 152 N.J. at 555 (quoting Hartmann v. Police Dep't of Ridgewood, 258 N.J. Super. 32, 40 (App. Div. 1992)).

Even when the unbecoming conduct alleged has elements similar to those that might comprise a hostile work environment claim, this Court has explained that "[t]he absence of [harassment] evidence in this type of case is not critical. . . . [I]t is not necessary 'for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.'" Karins, supra, 152 N.J. at 561-62 (quoting Connick v. Myers, 461 U.S. 138, 152, 103 S. Ct. 1684, 1692, 75 L. Ed. 2d 708, 723 (1983)).

Stated otherwise, proving hostile work environment is not necessary to satisfy the burden of showing unbecoming conduct. A charge of unbecoming conduct requires only evidence of inappropriate conduct by teaching professionals. It focuses on the morale, efficiency, and public perception of an entity, and how those concerns are harmed by allowing teachers to behave inappropriately while holding public employment. The Court has made it clear that the failure of a school board to prove a different offense does not preclude a finding of unbecoming conduct. In Young, supra, for example, this Court permitted tenure charges of unbecoming conduct based on a student's

13

allegations of sexual abuse that were deemed unfounded by the Department of Children and Families (DCF). 202 N.J. at 68-69. We explained that although the "DCF might conclude that sexual contact between a student and his former teacher does not constitute abuse or neglect under N.J.S.A. 9:6-8.21(c)," that determination "is a far cry from suggesting that it is not conduct unbecoming a school employee." Id. at 69-70.

Because claims of hostile work environment, sexual harassment and unbecoming conduct are governed by separate, distinct legal standards and in separate, distinct legal contexts, we next turn to the specifics of this case to consider whether the arbitrator correctly determined that Count II of the Board's complaint was properly subjected to the Lehmann standard.

V.

Count II of the Board's complaint claimed that defendant "engaged in unprofessional, inappropriate and potentially harassing behavior towards female staff members," and the coda to the complaint characterized the ground for termination, developed through both counts of the charges, as defendant's "unbecoming conduct." The Board framed the issue before the arbitrator as follows: "Has the Board of Education established the Tenure Charges of conduct unbecoming by a preponderance of the evidence?" This language clearly demonstrates that the

14

basis for the complaint was a violation of the District's code of conduct by "engag[ing] in inappropriate language or expression in the presence of pupils." The Board's proofs in Count II focused on defendant's repeated propositions of his co-workers in the presence of students, his inappropriate use of students as couriers to deliver flowers and inappropriate messages to colleagues he was pursuing, and his lascivious comments, made in the presence of students, about a colleague's clothing.

While there is passing reference to defendant's "potentially harassing behavior" in the charge, even a cursory reading of the complaint, and the underlying facts and evidence, demonstrate that the basis for discipline was broader misconduct of undermining the morale of his co-workers and behaving inappropriately when students were present.

This count was premised on the Board's assertion that defendant's actions violated Board Policy Number 4281, which addresses "Inappropriate Staff Conduct":

> School staff's conduct in completing their professional responsibilities shall be appropriate at all times. School staff shall not make inappropriate comments to pupils or about pupils and shall not engage in inappropriate language or expression in the presence of pupils.
>
> The Commissioner of Education has determined inappropriate staff conduct by a school staff member outside their professional

15

> responsibilities may be considered conduct unbecoming a public employee.

The arbitrator clearly recognized that the Board had proven inappropriate conduct when he found defendant's conduct to be a fundamental renunciation of his duties and obligations as a teacher that "raise[d] bad judgment to an art form."

Despite that conclusion, the arbitrator found that the Board failed to prove Count II. The arbitrator quoted Board Policy Number 3362 -- "Sexual Harassment" -- and made only fleeting reference to the "Inappropriate Staff Conduct" policy in his discussion of Count II. The arbitrator then applied the Lehmann standard and found Count II to be unproven because the "complained of actions [did] not meet the generally recognized definition of hostile work environment sexual harassment and [did] not rise to that level."

There are settings in which sexual harassment claims may provide the underpinnings of an unbecoming conduct charge. This is not one of them. Count II of the complaint charges "unprofessional, inappropriate and potentially harassing behavior." The arbitrator disproportionately focused on the "potentially harassing" allegation in his analysis, ostensibly disregarding the word "potentially" and the remaining charges in the sentence. The coupling of "unprofessional, inappropriate and potentially harassing" should have forewarned the arbitrator

16

that this was not a harassment charge.  Indeed, the inclusion of the word "potentially" reveals that the Board was not claiming harassment per se.

The explanation we espoused in Karins is instructive:  it is not necessary "for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." Karins, supra, 152 N.J. at 561-62 (quoting Connick, supra, 461 U.S. at 152, 103 S. Ct. at 1692, 75 L. Ed. 2d at 723).  Surely, a school board must not be required to prove a "severe and pervasive" effect for every harassment-based offense that buttresses a charge of unbecoming conduct.  As this Court explained in Young, a school district will not be hamstrung by failing to establish a claim beyond unbecoming conduct.

Here, the arbitrator erroneously faulted the Board for failing to prove a charge that it did not bring.  The arbitrator erred in his reliance on Lehmann because he imposed a different and inappropriate standard of proof on the Board to sustain its unbecoming conduct in the presence of students claim.  The arbitrator "imperfectly executed" his power by misinterpreting the intentions of the Board so significantly as to impose a sexual harassment analysis, when such an analysis was wholly ill-suited in this context.  The Lehmann standards for hostile-work-environment, sexual-harassment claims arise in an entirely

17

different context -- under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42.

"The LAD was enacted to protect not only the civil rights of individual aggrieved employees but also to protect the public's strong interest in a discrimination-free workplace." Lehmann, supra, 132 N.J. at 600.  In Lehmann, we established the standard for a cause of action for hostile work environment sexual harassment claims under the LAD.  Lehmann, supra, 132 N.J. at 592.  This Court promulgated a four-prong test, under which the plaintiff must show that "the complained-of conduct: (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive."  Id. at 603-04 (emphasis in original).  That standard, however, is not implicated in a termination hearing under the TEHL. None of the female employees affected by defendant's actions are suing the District-employer for turning a blind eye to sexual harassment in the workplace.  The instant matter is not an employee-versus-employer dispute that requires application of the Lehman standard.  Indeed, that standard distorts the evaluatory method pertinent to this matter, making it inappropriate for consideration here.

The re-characterization of Count II erroneously tasked the Board with substantiating charges it did not file with evidence it did not proffer. The arbitrator's review was not "consonant with the matter submitted," Grover, supra, 80 N.J. at 231; rather, he "imperfectly executed his powers" as well as exceeded his authority by failing to decide whether Count II stated a successful claim of unbecoming conduct in support of termination. We find the arbitrator's award invalid under N.J.S.A. 2A:41-8(d).

VI.

The judgment of the Appellate Division reinstating the arbitrator's award is reversed, and the matter is remanded for arbitration with a new arbitrator to determine whether defendant committed unbecoming conduct, and any appropriate penalty.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.

19