**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1874-24

HOBOKEN MUNICIPAL
EMPLOYEES ASSOCIATION,

    Plaintiff-Respondent,

v.

CITY OF HOBOKEN,

    Defendant-Appellant.

_____

Submitted January 15, 2026 – Decided February 10, 2026

Before Judges Marczyk and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3603-24.

Trenk Isabel Siddiqi & Shahdanian, PC, attorneys for appellant (Asaad K. Siddiqi and Valentina M. Scirica, on the briefs).

Limsky Mitolo, attorneys for respondent (Marcia J. Mitolo, on the brief).

PER CURIAM

Defendant City of Hoboken appeals from the trial court's January 16, 2025 order reversing and modifying the arbitration award entered in favor of plaintiff Hoboken Municipal Employees Association (HMEA). We affirm in part and reverse and remand in part for proceedings consistent with this opinion.

I.

This appeal arises from a collective bargaining agreement (CNA) between Hoboken and the HMEA. The HMEA is a public employee organization representing civilian municipal employees and is one of six bargaining units representing employees in Hoboken. Hoboken and the HMEA entered into a CNA spanning from July 2002 through June 2005. Thereafter, the parties entered into several successor memorandums of agreement (MOA), including the February 2022 MOA, which covered the period from January 2018 through December 2024. Article XXI of the CNA contains a multi-step grievance process for resolving disputes arising between Hoboken and the HMEA, which culminates in binding arbitration before the New Jersey Public Employment Relations Commission (PERC). Neither the CNA nor any subsequent MOAs address salary or benefits for employees who were laid off and then rehired. Additionally, the CNA does not provide longevity or terminal leave benefits for Hoboken employees hired after November 2016.

2

In September 2003, Annemarie Sacco began working for Hoboken in its Department of Public Safety as a full-time Keyboarding Clerk I and, as such, was a member of the HMEA. She was laid off from that position in 2008 but was later rehired from a special reemployment list in December 2010. Upon being rehired, Sacco's salary and benefits were calculated using her 2003 original date of hire rather than her 2010 rehire date.

In January 2020, after learning anticipated spending increases for 2020 would lead to a significant budget gap, Hoboken submitted a layoff plan to the New Jersey Civil Service Commission (CSC), which the CSC approved in February 2020. In May 2020, the CSC notified affected employees and informed them of their respective rights.

Sacco was among those laid off pursuant to Hoboken's layoff plan and was again placed on the CSC's special reemployment list. Prior to being laid off in 2020, Sacco had been earning a $57,000 annual salary, receiving a twelve-percent longevity payment, and was entitled to twenty-five vacation days annually. These benefits were calculated based on her original 2003 hire date and not her 2010 rehire date.

In December 2020, Hoboken requested a list of eligible candidates from the CSC to fill a vacant Keyboarding Clerk I position. Sacco received a

certification from the CSC advising she was eligible for reappointment from the special reemployment list. A personnel officer informed her: the annual salary for the position was $43,000; she would receive one vacation day and one sick day per month during the first year of her new employment, calculated according to her rehire date; she would be eligible for insurance coverage after sixty days of employment; and she would be considered a new hire and thus not eligible for longevity pay. Sacco accepted the position.

In January 2021, Sacco began working in her new position. Thereafter, the HMEA filed a grievance on Sacco's behalf, as well as on behalf of similarly affected employees, challenging their status as "new" employees and demanding they be paid pursuant to their pre-layoff salaries.

In August 2021, PERC notified Hoboken an arbitrator had been appointed to the matter. In January 2024, a hearing was held by videoconference, during which both parties presented testimony and submitted post-hearing briefs. In July 2024, the arbitrator issued an award ordering Hoboken to reinstate Sacco's vacation leave benefits "consistent with her entire years of service . . . and according to the vacation benefit schedule in the [a]greement, retroactively to January 2021," after determining Hoboken violated the MOA by compelling Sacco to accept benefits "as if she were a new hire." However, the arbitrator

also found Hoboken had not violated the MOA by assigning Sacco a new salary rate or by refusing to give her longevity or terminal leave benefits in January 2021.

Regarding the salary issue, the arbitrator found the MOA was "silent as to what salary level sh[ould] be assigned to employees rehired from CSC special reemployment lists," although she did note a "review of the parties' practices" showed Hoboken "ha[d] discretion, within the negotiated salary range, to determine starting salary rates." The arbitrator further found the MOA "contain[ed] no term identifying how longevity and terminal leave benefits [we]re to be handled when employees return[ed] to work for . . . [Hoboken] from special reemployment lists." She added, "I believe such subjects are negotiable as they concern terms and conditions of employment[,] but there is no evidence the parties . . . negotiated." The arbitrator noted, "Sacco's newest hiring date [wa]s after [November 2016]," which meant she was "not entitled to have [longevity and terminal leave] benefits restored under the [MOA] or a regulation."

Thereafter, the HMEA filed a verified complaint and order to show cause seeking to vacate portions of the arbitration award and for the court to direct Hoboken to cease unilaterally establishing the wages and benefits of employees

A-1874-24

the HMEA represented. Following a hearing, the trial court found Sacco had previously been laid off and rehired in 2010 without suffering a loss in salary or benefits. It noted the arbitrator "ignored" this fact and determined it did not "create a past practice," stating "one instance doesn't establish [a] past practice." The court determined the CNA and State regulations were silent on the issue of salary and benefits for employees laid off and later rehired for the same position as a "new hire." It noted the arbitrator found Hoboken's practice of establishing the starting salary for new hires allows it to set salaries for rehires such as Sacco, and the CNA contained language giving it the discretion to do so.

The court vacated the arbitration award, concluding the arbitrator's decision was not "based upon a fair reading of the [CNA]" regarding the salary and longevity issues. It reasoned both the State's regulations and the CNA were unclear on the issues, and the arbitrator made "an obvious mistake of law [in] conclud[ing] . . . [Hoboken] ha[d] the discretion to decide what [Sacco's] salary w[ould] be on its own," which it found "not reasonably debatable."

The court also concluded it was not reasonably debatable that Hoboken "cannot decide or try to address what the salary and longevity would be for an employee like . . . Sacco to be rehired off [the special reemployment] list." Rather, it stated the issue was "still an open question" that "needs to be addressed

6

through further collective bargaining discussions." The court noted it did not "make any sense" for the arbitrator to find there was a past practice that gave Hoboken the discretion to set Sacco's salary when there was "no evidence of . . . [Hoboken] rehiring somebody off a list like they did here." Accordingly, it reversed PERC's arbitration award and entered an accompanying order requiring Sacco be given the salary longevity and benefits she had been entitled to receive prior to being laid off in 2020.

II.

Hoboken argues on appeal the trial court improperly modified the arbitrator's award without a valid statutory basis in violation of N.J.S.A. 2A:24-9. It contends the court impermissibly modified the award based on its own interpretation of the CNA, thereby substituting its judgment for the arbitrator's, making the modification ultra vires. Hoboken also argues there is no basis to vacate the award pursuant to N.J.S.A. 2A:24-8.

Generally, "[j]udicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220

7

N.J. 544, 556 (2015). "[T]o ensure finality, as well as to secure arbitration's speedy and inexpensive nature, there exists a strong preference for judicial confirmation of arbitration awards." Borough of East Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 201 (2013) (alteration in original) (quoting Middletown Twp. PBA Loc. 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)).

A trial court's decision to confirm an arbitration award is a conclusion of law, which we review de novo. Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013). Similarly, we "review the trial court's decision on a motion to vacate an arbitration award de novo." Yarborough v. State Operated Sch. Dist. of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018). We are bound to accept the trial court's factual findings unless those findings are "clearly erroneous." Del Piano v. Merrill Lynch, Pierce, Fenner & Smith Inc., 372 N.J. Super. 503, 507 (App. Div. 2004) (citing Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48 (1995)).

Therefore, "an arbitrator's award resolving a public sector dispute will be accepted so long as the award is 'reasonably debatable.'" Borough of Carteret v. Firefighters Mut. Benevolent Ass'n, Loc. 67, 247 N.J. 202, 211 (2021) (quoting Borough of East Rutherford, 213 N.J. at 201-02). "Under the reasonably

debatable standard, a court [reviewing a public-sector arbitration award] 'may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position.'" Id. at 212 (quoting Borough of East Rutherford, 213 N.J. at 201-02). "If the correctness of the award, including its resolution of the public-policy question, is reasonably debatable, judicial intervention is unwarranted." Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 443 (1996).

Hoboken argues there are no valid grounds to modify the arbitration award under N.J.S.A. 2A:24-9. It asserts: there is no evidence or argument made regarding a miscalculation; the arbitrator did not decide a matter not submitted to her; and the award was not imperfect as a matter of form. Hoboken emphasizes the court modified the merits of the award, which it contends exceeded its statutory authority. It also avers the order is contrary to the deferential standard of review applied to an arbitrator's interpretation of a contract because the court substituted its own judgment in place of the arbitrator's. Hoboken further points out—in its brief in support of its order to show cause before the trial court—the HMEA conflated the standards for

A-1874-24

modifying arbitration awards under N.J.S.A. 2A:24-9 and vacating awards under N.J.S.A. 2A:24-8.[1]

Alternatively, Hoboken argues the award should not be vacated pursuant to N.J.S.A. 2A:24-8, even if we determine the provision applies. It highlights the HMEA argued before the trial court, the arbitrator exceeded her authority by ignoring the unambiguous language of the CNA but asserts "there is nothing clear or unambiguous." Rather, citing Tretina Printing, Inc. v. Fitzpatrick & Associates, Inc., 135 N.J. 349, 352 (1994), Hoboken contends "[a]dequate grounds" for vacating the award cannot be met through "one party merely disagreeing with the outcome of an arbitration decision" because then parties would seek judicial relief for every "dissatisfactory outcome." It also avers, assuming arguendo the trial court correctly determined there were adequate grounds to vacate the award, the court should have remanded the matter back to arbitration for clarification or correction, and because it did not, the trial court acted ultra vires in modifying the award by its own initiative.

---

[1] In its brief before us, the HMEA also incorrectly states "award[s are] subject to modification" when citing to language under N.J.S.A. 2A:24-8, which only allows the court to "vacate" an award. As discussed below, modification of an arbitration award is only permitted pursuant to N.J.S.A. 2A:24-9.

Under N.J.S.A. 2A:24-8, a "court shall vacate" an arbitration award in the following circumstances:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

Additionally, pursuant to N.J.S.A. 2A:24-9, a "court shall modify or correct" an arbitration award:

> a. Where there was an evident miscalculation of figures or an evident mistake in the description of a person, thing or property referred to therein;
>
> b. Where the arbitrators awarded upon a matter not submitted to them unless it affects the merit of the decision upon the matter submitted; and
>
> c. Where the award is imperfect in a matter of form not affecting the merits of the controversy.

Under N.J.A.C. 4A:8-2.1(c), "[a] special reemployment right means the right of a permanent employee, based on [their] permanent title at the time of the layoff action, to be certified for reappointment after the layoff action to the same, lateral, and lower related titles." Special reemployment lists "include former and current permanent employees who were laid off, laterally displaced or demoted in lieu of layoff." N.J.A.C. 4A:4-3.1(a)(5). "Employees reappointed from a special reemployment list shall be considered as having continuous service for seniority purposes . . . ." N.J.A.C. 4A:8-2.4(f).

Here, although the trial court did not clearly state whether it was relying on N.J.S.A. 2A:24-8 to vacate the award or N.J.S.A. 2A:24-9 to modify the award, it is evident by the court's order and decision it proceeded under N.J.S.A. 2A:24-8.[2] The trial court "reversed" and thereby vacated the arbitration award. In this regard, we affirm substantially for the reasons set forth in the trial court's decision.

The court, after reviewing the entire record, concluded the arbitrator's decision was not "based upon a fair reading" of the CNA because she erroneously found Hoboken had discretion to unilaterally set salary and benefits

---

[2] Although Hoboken asserts the HMEA did not seek to vacate under N.J.S.A. 2A:24-8, the HMEA's complaint did, in fact, seek relief under N.J.S.A. 2A:24-8 to vacate the arbitration award.

A-1874-24

upon rehire. It found the arbitrator made a "mistake of law [in] conclud[ing] . . . [Hoboken] has the discretion to decide what [Sacco's] salary will be on its own," which it found "not reasonably debatable." The court further reasoned the CNA and State regulations were silent on the issue of wage and benefit rights for employees rehired from the special reemployment list, like Sacco, but noted the CNA explicitly provided the HMEA was the exclusive bargaining agent for establishing wages and employment benefits.

The court's analysis fits within the framework of N.J.S.A. 2A:24-8, which authorizes vacatur where the arbitrator exceeds or imperfectly executes their powers, including errors of law apparent on the record. However, the court did not simply vacate the order. It went on to modify the award by noting its decision was "retroactive to . . . Sacco's date of rehire," and "Sacco [wa]s to be given the salary longevity and benefits she was entitled to before she was released in May[] 2020." A court can only modify or correct an arbitration award under N.J.S.A. 2A:24-9. Therefore, the court's modification of the arbitrator's award here was not permitted because the court made no findings under N.J.S.A. 2A:24-9.

A-1874-24

Accordingly, we affirm insofar as the court vacated the arbitration award but reverse the portion of the order that modified the award. We remand for the court to proceed as set forth in N.J.S.A. 2A:24-8 when an award is vacated.[3]

Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

---

[3] N.J.S.A. 2A:24-8 provides: "When an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."

A-1874-24